KENDRA C. SMITH,

     Plaintiff,

v.

THISTLE FARMS, et al.,

     Defendants.

Case No. 3:25-cv-01007

Judge Eli J. Richardson
Magistrate Judge Luke A. Evans

To:    The Honorable Eli J. Richardson, District Judge

## **REPORT AND RECOMMENDATION**

Pending before the Court is Defendants Tasha Kennard and Courtney Sobieraski's motion to dismiss Plaintiff Kendra Smith's civil rights action. (Doc. No. 10.) Smith brings discrimination claims against Kennard, Sobieraski, and their employer, Thistle Farms, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.* (Doc. No. 1.) Smith also brings claims under the U.S. Constitution and three Tennessee state criminal statutes: harassment under Tenn. Code Ann. § 39-17-308, intimidation of others from exercising civil rights under Tenn. Code Ann. § 39-17-309, and the filing of false reports with law enforcement under Tenn. Code Ann. § 39-16-502. Smith filed a response in opposition to Defendants' motion (Doc. No. 12) and the motion is ripe for consideration. After reviewing the pleadings, and for the reasons that follow, the Magistrate Judge will recommend that the motion to dismiss (Doc. No. 10) be granted.

## I. Background

### A. Factual Background

According to Smith's pro se complaint, she was hired by Thistle on December 11, 2023, as a licensed practical nurse ("LPN"). (Doc. No. 1.) Approximately two months later, on February 8, 2024, Smith says that she approached Kennard and Sobieraski (collectively, the "Individual Defendants") "regarding illegal smoking, vaping, and drug use inside the workplace[,]" as well as conveying Smith's concerns that her direct supervisor was asking her "to break the law and work outside of [the] scope of [her] practice." (*Id.* at 8, ¶¶ 2, 3.)

On or about February 8 and 9, 2024, Smith says that she reported that she felt unsafe at home and in the workplace, but that she was subsequently met with "an increasingly hostile work environment" and that she "was harassed, defamed, and retaliated against." (*Id.* at 8, ¶¶ 5, 6.) Later on February 9, 2024, Smith asserts that Thistle arranged for a Metropolitan Nashville Police Department Officer and a mental health responder to be on site while Smith retrieved personal items from her office. (*Id.* at 8, ¶ 7.) Smith alleges that, later that evening, Kennard filed a report with the Mt. Juliet, Tennessee, Police Department ("MJPD") and that, as a result, MJPD officers responded to her home. (*Id.* at 8, ¶ 8.) According to Smith, Thistle eventually terminated her employment effective February 13, 2024. (*Id.* at 8, ¶ 9.)

### B. Procedural History

Smith's complaint and supporting documents show that she filed a charge of discrimination and retaliation against Thistle under Title VII and the ADA with the Tennessee Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC") on December 3, 2024. (Doc. No. 1-1.) As "the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government" that Smith believed engaged in discrimination, she named "Thistle Farms, Inc." (*Id.* at 1.) On June 13, 2025, the EEOC issued its

2

determination that it would not proceed with any further investigation and provided Smith with notice of her right to sue within ninety days. (Doc. No. 1-1.) Accordingly, Smith filed the instant action on September 4, 2025, and named Thistle, Kennard, and Sobieralski as defendants. (Doc. No. 1.) Utilizing the "JS 44" civil cover sheet, Smith asserts federal question jurisdiction and alleges federal claims under 42 U.S.C. §§ 1983, 2000e, and 12112. (Doc. No. 1-4.)

Smith's complaint is not always clear as to which defendants she levies her allegations. Under her Title VII and ADA claims, Smith appears to plead that all three named defendants discriminated against her due to her asthma, Post-Traumatic Stress Disorder, and anxiety in violation of the ADA. Similarly, Smith broadly accuses all three defendants of discrimination because they terminated her employment, failed to accommodate her disability or perceived disability, subjected her to unequal terms and conditions of her employment, otherwise harassed and intimidated her, and then retaliated against her. (Doc. No. 1.)

Smith also asserts that Defendants engaged in harassment, the intimidation of others from exercising civil rights, and the filing of false reports with law enforcement under Tennessee's criminal codes. (*Id.*) Finally, Smith concluded her factual assertions by stating that "Plaintiff's federal civil rights of the U.S. Constitution including but not limited to the 4th, 5th, 9th, and 14th Amendments have been violated by the defendants." (*Id.* at 8, ¶ 14.)

Thistle answered Smith's complaint and denied her allegations on November 12, 2025 (Doc. No. 9). Later that same day, the Individual Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. No. 10). In their memorandum in support of their motion to dismiss, the Individual Defendanst state that,

> [i]n addition, Defendant Thistle Farms respectfully requests that this Court dismiss Plaintiff's Complaint against it with respect to her claims under Tennessee Code

Annotated 39-17-308(2), 39-16-502 and 39-17-309 as they are criminal statutes with no private right of action and the Fourth, Fifth, Ninth and Fourteenth Amendments of the U.S. Constitution as they are not enforceable against non-governmental entities.

(Doc. No. 10 at 1.) Smith filed a response in opposition to Defendants' motion to dismiss on November 21, 2025. (Doc. No. 12.)

The case was referred to the Magistrate Judge for case management and to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B) and the pending motion to dismiss is ripe.

## II.      Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting

*Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Smith appears pro se, the Court construes her filings "'liberally'" and holds her complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012). "[C]ourts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## III.      Analysis

### A.      Preliminary Issues

As an initial matter, the Court notes that the parties have used the initial pleading stage to improperly raise issues. The first involves Thistle's procedural posture. Despite having filed a responsive pleading (Doc. No. 9), Thistle asks, almost as an afterthought, to join in the Individual Defendants' motion to dismiss Smith's claims under the Constitution and the aforementioned Tennessee criminal statutes (Doc. No. 10).

"A motion asserting any of [the defenses in subdivision (b)] must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Albeit on the same day, Thistle chose to answer the complaint before attempting to plead relief through the Individual Defendants' motion. As a result, the Court cannot evaluate Thistle's request—a request that is effectively a motion—in its current procedural posture. *See Lindsay v. Yates*, 498 F.3d 434, 437 n.4 (6th Cir. 2007) (Rule 12(b)(6) must be brought before answering the complaint); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n.1 (6th Cir. 1988) (post-answer Rule 12(b)(6) motion

5

untimely but could be considered as a Rule 12(c) motion); *Premium Balloon Accessories, Inc. v. Creative Balloons Mfg., Inc.*, No. 5:11CV00615, 2012 WL 443254, at *1 n.2 (N.D. Ohio Feb. 10, 2012) (Rule 12(b)(6) deemed untimely and converted to Rule 12(c) motion even when filed nine minutes before complaint); *Limbright v. Hofmeister*, No. CIVA5:09-CV-107KSF, 2010 WL 1740905, at *3 (E.D. Ky. Apr. 27, 2010) (Rule 12(b)(6) motion untimely when filed four hours after the answer).

Here, Thistle's "motion" is both untimely as a motion to dismiss under Rule 12(b)(6) and premature as a motion for judgment on the pleadings under Rule 12(c). *Brown v. City of Franklin*, Case No. 3:16–cv–01342, 2016 WL 6948363, at *4 (M.D. Tenn. Nov. 28, 2016) (finding a motion "both late, because filed post-answer, and premature, because filed before the pleadings closed."). It is premature under Rule 12(c) because "[t]he pleadings in this case are not closed because [the Individual Defendants] ha[ve] not filed an answer." *Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 628 (W.D. Mich. 2015). Exercising its discretion to do so, the Court construes Thistle's request for dismissal included in Defendants' motion to dismiss as a post-answer 12(b)(6) motion[1] because Thistle raised the issue as an affirmative defense. *Brown v. City of Franklin*, 2016 WL 6948363 at *4 (considering a motion a post-answer 12(b)(6) motion because defendants preserved their affirmative defenses in their answer). The Court will therefore analyze whether Smith has adequately pled cognizable claims against Thistle, but only to those claims arising under the enumerated Tennessee criminal statutes and the aforementioned constitutional amendments.

---

[1] "It makes little practical difference" whether a motion is construed as one under Rule 12(b)(6) or 12(c), "because the standards of review of the two motions are '[f]unctionally . . . the same.'" *Zajaros v. Volvo Car Corp.*, Case No. 3:23-cv-00951, 2025 WL 1762963, at *2 (M.D. Tenn. June 25, 2025) (alterations in original) (quoting *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)).

The next issue concerns Smith's response in opposition to the motion to dismiss. Smith argues against dismissal and, in doing so, appears to raise new issues and seek new relief. For example, Smith asks that the Court either "compel defense counsel to cooperate with discovery or grant default judgment" in Smith's favor. (Doc. No. 12 at 1.) Later, Smith states that "[n]one of [her] claims should be dismissed, and [she] should be granted leave of court to amend [her] complaint to conform to discovery once defendants' motion to dismiss is denied." (*Id.* at 2.) Then, Smith explains that she was fearful of reporting additional discrimination and "requests that this court allow . . . Smith to file such allegations and facts under seal . . . ." (*Id.* at 4.) Finally, Smith argues that all three defendants and their counsel should be sanctioned for alleged violations of miscellaneous rules and procedures. (*Id.* at 4–5.)

Here, due to her pro se status, the Court liberally construes Smith's response in opposition as requesting the following relief: (1) leave to file an amended complaint; (2) leave to file additional allegations and facts under seal; (3) sanctions against Defendants' counsel; and (4) an entry of default judgment against Defendants. (Doc. No. 12 at 2, 4, 5.) However, it has long been held that, "[g]enerally, a plaintiff may not amend h[er] complaint by adding factual allegations as a part of a response in opposition to a motion to dismiss." *Becton v. Corr. Corp. of Am.*, No. 3:16–2282, 2017 WL 1461632, at \*2 (M.D. Tenn. Mar. 28, 2017). *See also Orea Energy Group, LLC v. E. Tenn. Consultants, Inc.*, No. 3:09–CV–041, 2009 WL 3246853 at \*3 (E.D. Tenn. Oct. 6, 2009) ("[T]hese allegations are nowhere to be found in the complaint. They are present only in plaintiff's briefing, and it is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Insofar as Smith seeks an order or orders from the Court permitting her to amend her complaint, allowing her to file supplemental facts or arguments under

seal, levying sanctions on opposing counsel, or entering default judgment against the defendants, those requests are improperly before the Court and will not be considered.

### B. Motion to Dismiss

#### 1. Claims Under Tennessee Criminal Statutes

Turning to the Individual Defendants' motion to dismiss, the Court will recommend that Smith's claims under Tenn. Code Ann. §§ 39-16-502, 39-17-308, and 39-17-309 be dismissed as to Thistle, Kennard, and Sobieraski. These three statutes criminalize the initiation of false reports or statements to law enforcement, harassment, and the interference of one's exercise of civil rights, respectively. However, Smith has not shown that any of these criminal statutes provide individuals with the ability to bring civil action against an individual or entity for alleged violations. "A private right of action is the right of an individual to bring suit to remedy or prevent an injury that results from another party's actual or threatened violation of a legal requirement." *Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149, 158 (6th Cir. 2014) (quoting *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 296 (3d Cir. 2007)). "Tennessee law requires that private rights of action be expressly provided for in the relevant statute." *King v. Shoate*, No. 20-cv-1145, 2023 WL 4188051, at *4 (W.D. Tenn. June 26, 2023) (citing Tenn. Code Ann. § 1-3-119).

The Court has previously written the following regarding similar claims purportedly arising under the violation of criminal statutes:

> Initially, Plaintiff fails to state plausible legal claims based on her allegations that federal criminal statutes have been violated. Unless specifically provided for in the statute, a federal criminal statute rarely creates a private cause of action that can form the basis for a civil claim. *See Nashville Milk Co. v. Carnation Co.*, 355 U.S. 967 (1958); *Young v. Overly*, 2018 WL 5311408 at *2 (6th Cir. July 2, 2018); *Milgrom v. Burstein*, 374 F. Supp. 2d 523, 529 (E.D. Ky. 2005). Plaintiff has not shown that any of the various federal criminal statutes that she refers to in her amended complaint have been found to create a private cause of action upon which she can seek relief in this case. Furthermore, within the stance of a civil case, the Court has no authority to enforce criminal statutes or permit a civil party to act in the role of a criminal prosecutor. The prosecution of criminal statutes is a matter

8

left to the sound discretion of law enforcement authorities. *See Hossain v. Ocwen Loan Servicing, LLC*, 2014 WL 4347620 at *2 (M.D. Tenn. Aug. 29, 2014) (Trauger, J.) ("Among other reasons, violations of federal criminal laws are prosecuted by United States Attorneys and do not create civil causes of action by private citizens.").

The same conclusion generally holds true for criminal statutes under the Tennessee Code. *Schmidt*, 2008 WL 597687 at *2; *Douglas v. McLain*, 2016 WL 51277 at *4 (W.D. Tenn. Jan. 4, 2016). Plaintiff has not shown that any courts recognize a private civil cause of action under the Tennessee criminal statutes that she refers to in her amended complaint. Indeed, several courts have found that these statutes do not create private causes of action. *See Bohler v. City of Fairview*, 2018 WL 5786234 at *18 (M.D. Tenn. Nov. 5, 2018) (Trauger, J.) (no private cause of action under T.C.A § 39-16-503); Douglas, 2016 WL 51277 at *4 (no private cause of action under T.C.A. § 39-16-702); *Davis v. Earls*, 2001 WL 589138 at *3 (Tenn. Ct. App. May 30, 2001) (no private cause of action under T.C.A. § 39-16-403); *Schmidt*, 2008 WL at *2 (no private cause of action under T.C.A. § 39-12-103); *Davis v. Tennessee Wildlife Res. Agency*, 2006 WL 861352 at *7 (Tenn. Ct. App. Apr. 5, 2006) (no private cause of action under T.C.A. § 39-17-309).

*Lee v. Stewart*, NO. 3:19-01004, 2020 WL 6054336, at *3–4 (M.D. Tenn. Mar. 26, 2020) (footnotes omitted), *report and recommendation adopted by* 2020 WL 4333746 (M.D. Tenn. July 28, 2020).

Smith's claims arising under Tennessee's criminal code should be dismissed for failure to state a claim for which relief may be granted. *See Molthan v. Vanderbilt Univ.*, No. 3:17–cv–00706, 2 017 WL 1489099, at *3 (M.D. Tenn. Apr. 26, 2017) (finding that Tenn. Code Ann. § 39-17-308 does not create a private cause of action); *Davis*, 2006 WL 861352 at *7 (no private cause of action under Tenn. Code Ann. § 39-17-309); *King*, 2023 WL 4188051, at *4 (no private right of action under Tenn. Code Ann. § 39-16-502).

9

### 2.      Constitutional Claims

Next, the Individual Defendants and Thistle seek to dismiss Smith's constitutional claims. Smith states in her complaint[2] that her "federal civil rights of the U.S. Constitution including but not limited to the 4th, 5th, 9th, and 14th Amendments have been violated by defendants." (Doc. No. 1 at 8.) Section 1983 permits plaintiffs to bring claims against government officials who "deprived [them] of rights, privileges or immunities secured by the Constitution or laws of the United States" while acting under color of state law. *Rhinehart v. Scutt*, 894 F.3d 721, 735 (6th Cir. 2018) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)). To prevail on a claim under § 1983, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010)). Additionally, a defendant or defendants will only be considered "state actors" where the conduct allegedly giving rise to the deprivation of a plaintiff's constitutional rights may be "fairly attributable to the state." *Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014) (citing *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922 (1982)). Whether defendants are state actors is a question of law for the Court. *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002).

As a threshold matter, Smith's claim rooted in a violation of the Ninth Amendment necessarily fails "because the Ninth Amendment 'does not confer substantive rights in addition to those conferred by other portions of our governing law.'" *Lloyd v. City of Streetsboro*, No. 18-

---

[2]      The Court construes Smith's complaint as bringing the constitutional claims pursuant to 42 U.S.C. § 1983 consistent with her designation as a cause of action on Smith's civil cover sheet. (Doc. No. 1-4.)

3485, 2018 WL 11298664, at \*5 (6th Cir. Dec. 20, 2018) (quoting *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991)).

In moving to dismiss under Rule 12(b)(6), the Individual Defendants argue that Smith's claims fail as a matter of law because "[e]ach of the cited Amendments only protect against governmental action, not private action." (Doc. No. 10 at 6.) The Individual Defendants add that Smith "does not aver, nor can she, that [any of the three named defendants] are government entities." (*Id.* at 7.) In response, Smith argues that "[t]he Fourth, Fifth, Ninth, and Fourteenth Amendments of the US Constitution are enforceable against non governmental entities when defendants act as state actors under the color of law." (Doc. No. 12 at 1.) Smith further argues that, while the defendants assert that they are not state actors for purposes of claims of unconstitutional conduct, they failed to make the "mandatory disclosure statements" as required under this Court's Local Rule 7.02.[3] (*Id.* at 4.)

Here, the Court finds that, at this stage, Smith has not met her burden of pleading facts sufficient to plausibly claim that Thistle, Kennard, and Sobieraski are "state actors" for the purposes of § 1983. Smith states that, "[w]hile defense counsel argues that . . . none of the defendants are government entities[,] . . . no business entity disclosure has been filed . . . ." (*Id*. at 2.) Construed liberally consistent with Smith's pro se status, it appears that Smith is arguing that the Court might infer that the defendants are government entities because they have failed to file a disclosure proving otherwise.

The Court first notes that the purpose of Local Rule 7.02 is largely to help ensure that the Court has diversity jurisdiction to hear an action. *See, e.g.,* Order at 3, *Weeks v. SCC SPV I, LLC,*

---

[3]     Smith is correct that Thistle has not complied with Rule 7.02's requirement that "[a]ny non-governmental business entity party must file a Business Entity Disclosure Statement," despite the court's Notice directing parties to do so. (Doc. No. 5.)

Case No. 3:25-cv-00256 (M.D. Tenn. June 30, 2025) (Doc. No. 18) (ordering defendant to file an amended business entity disclosure statement to assure the court of its diversity jurisdiction). Here, the Court has federal question jurisdiction because Smith brought claims under federal law. Accordingly, questions about the omitted disclosure are largely irrelevant to the instant action. Additionally, if Smith is intimating that the Court may infer from this omission that Thistle, Kennard, and Sobieralski are state actors, that argument is misplaced and the Court declines to make such an inference. At the motion to dismiss stage, Smith must plead sufficient factual allegations that, taken as true, show the named defendants are state actors for purposes of § 1983. To infer any of the defendants are state actors because they have not proven otherwise would erroneously shift Smith's burden at this stage.

The Court finds that Smith has not pled sufficient facts to demonstrate any of the defendants acted under the color of law as to be liable for an alleged deprivation of Smith's constitutional rights. Smith's claims fail on this issue alone and the Court need not assess whether she has plausibly claimed cognizable violations of her rights. These constitutional claims should be dismissed against Thistle, Kennard, and Sobeiraski.

As stated above, the Court's review of the Individual Defendants' motion to dismiss is limited, as it pertains to Thistle, to the statutory and constitutional issues just discussed. Accordingly, the remainder of the Court's analysis of Smith's claims applies only to the Individual Defendants Kennard and Sobieraski.

### 3. Intentional Infliction of Emotional Distress ("IIED")

After reviewing Smith's complaint, the Court construes her pleading as raising a claim of IIED only against the Individual Defendants.[4] Although Smith does not spell out such a claim, she states that:

> Throughout the course of Ms. Smith's employment, she notified supervisor and HR and asked for accommodation regarding her asthma. On or about Feb 8, 2024, Ms. Smith disclosed a PTSD diagnosis to, and informed Tasha Kennard and Courtney Sobieralski that she was in a pending lawsuit with the city of Mt. Juliet and fearful of the Mt Juliet Police Department due to an incident of assault, trespassing, and aggravated burglary committed by MJPD against Ms. Smith in her home on or about January 2021. On the same day Ms. Smith also filed a complaint against employer alleging illegal activity, harassment, hostile work environment, and retaliation. On or about Feb 9, 2024, Ms. Kennard, acting CEO of Thistle Farms, while in collaboration with Courtney Sobieralski made a false police report to MJPD regarding Ms. Smith to further intimidate, harass, and instill fear in Ms. Smith. This resulted in an excessive traumatic police response to Ms. Smith's home traumatizing Ms. Smith and her family. Thistle Farms is a trauma informed entity in which both employees had received "trauma informed training" and acted in malice in retaliation of Ms. Smith reporting the illegal activity and asking for ADA accommodations. Earlier that day, Ms. Smith, while still employed by Thistle Farms, went to her office to collect personal belongings while placed on leave. The same defendants had a Metro Police Officer present and a mental health professional who "evaluated" Ms. Smith. Ms. Smith had also asked for accommodation regarding being

(Doc. No. 1 at 7.)

To state an IIED claim in Tennessee, "a plaintiff must allege that 'the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff.'" *Doe v. Bucciarelli*, Case No. 3:24-cv-00974,

---

[4] As liberally construed, Smith does not appear to argue that Thistle is liable under this theory. She fails to allege any facts that would support a claim of IIED against Thistle and the only reasonable reading of her complaint, insofar as she intended to raise an IIED claim, is that she raises the claims against the Individual Defendants only. To construe otherwise based on the plain reading, even liberally construed, would require the Court to conjure up unpled factual assertions, which the Court declines to do. *Brown v. Cracker Barrel Rest.*, 22 F. App'x at 578.

2025 WL 1479719, at *4 (M.D. Tenn. May 22, 2025) (quoting *Lemon v. Williamson Cnty. Schs.*, 618 S.W.3d 1, 21 (Tenn. 2021)). "[M]ere insults, indignities, threats, annoyances, petty oppression or other trivialities[ ]" are insufficient to state an IIED claim. *Id.* (internal citations omitted).

The Court finds that, as liberally construed, Smith has alleged sufficient facts to plausibly show that the Individual Defendants acted intentionally or recklessly in having Smith monitored as she gathered her belongings and filing a police report. Smith also plausibly states that this conduct resulted in serious mental injury. While Smith arguably satisfies the first and third elements, the Court finds that she has not met her burden of establishing that the conduct complained of was "so outrageous that it is not tolerated by civilized society." *Bucciarelli*, 2025 WL 1479719 at *4. In Tennessee, this is a high standard to meet. *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 684 (M.D. Tenn. 2018) (describing the standard has "highly demanding" and "exacting").

Tennessee courts are skeptical of IIED claims in employment discrimination actions like Smith's here. Generally, "trial courts should be wary of permitting IIED claims to move forward in employment discrimination cases, absent exceptional allegations." *Garner v. SDH Servs. E., LLC*, 55 F. Supp. 3d 1016, 1026 (M.D. Tenn. 2014). Here, the conduct complained of includes "having a Metro Police officer and a mental health professional who 'evaluated' Ms. Smith" while she collected her personal belongings and collaborating to make "a false police report to MJPD regarding Ms. Smith . . . ." (Doc. No. 1 at 7.)

Smith points to no authorities suggesting that an employer acts outrageously by having police and social workers supervise a suspended employee as they retrieve their personal belongings. As to the alleged filing of a false police report, this Court has recognized that, under some circumstances, a defendant's conduct may be sufficiently outrageous where they knowingly

file false police reports against a plaintiff. *See, e.g., Reguli v. Woodruff*, Case No. 3:24-cv-00694, 2025 WL 949992, at *24 (M.D. Tenn. Mar. 28, 2025) (explaining that there is some "relevant authority providing that, under certain circumstances, 'false threats . . . of criminal prosecution' may be sufficiently outrageous to support an IIED claim under Tennessee law.").

However, under the facts pled here, Smith has failed to offer more than conclusory statements that the Individual Defendants "made a false police report . . . to further intimidate, harass, and instill fear in Ms. Smith." As it relates to the outrageousness prong of an IIED claim, the Court finds that Smith has failed to meet her burden. Even taking Smith's assertion that the Individual Defendants filed a false police report and that the subsequent police response caused the necessary harm, she has not pled sufficient facts that the Individual Defendants knew that the report Kennard filed was false. *Cf. Clayton v. Hogan*, Case No. 3:22-cv-00936, 2023 WL 7930052, at *11 (M.D. Tenn. Nov. 16, 2023) (dismissing an IIED claim, in part, because plaintiff's complaint contained "no affirmative allegations that [the defendants] knowingly made false allegations of fact regarding the plaintiff to any members of the District Attorney's Office.").

Having construed Smith's complaint as raising a claim of IIED, the Court finds that Smith has not met her burden. She has not pointed to any authorities that would support her allegation that the Individual Defendants—by either having a police officer and social worker observe Smith as she retrieved her personal belongings or by allegedly filing a police report against Smith that resulted in MJPD responding to Smith's home—acted in a sufficiently outrageous manner as to allow Smith's IIED claim to proceed. *Cf. Handlon v. Rite Aid Servs., Inc.*, 513 F. App'x 523, 531 (6th Cir. 2013) (affirming lower court's dismissal of an IIED claim because "[n]o interpretation of Rite Aid's activity—which include[d] processing employee complaints of friction in the

workplace, performing a theft investigation, reporting suspected theft to the police, suspending an employee, and terminating an employee—c[ould] be presented as fitting this description.").

Accordingly, the claim should be dismissed as to the Individual Defendants.

### 4. Title VII and ADA Claims Against Individual Defendants

Finally, Smith argues that the Individual Defendants acted in a discriminatory manner in violation of Title VII and the ADA. (Do. No. 1.) The parties disagree as to whether Smith originally named Kennard and Sobieralski in her EEOC complaint. The Individual Defendants argue that Smith did not name them, while Smith states that

> the city and county to which law enforcement and DA are employed. Plaintiff did bring a charge of discrimination against all three named defendants and is unclear how defendants are seemingly unaware as Plaintiff Smith took extra steps to remedy prior to filing any

(Doc. No. 12 at 3.) Based on Smith's own documentation of her EEOC complaint, it does not appear that the Individual Defendants were named in her EEOC complaint. (Doc. No. 1-1.) It is undisputed, however, that Smith has levied claims of discrimination under Title VII and the ADA in the instant action. (Doc. No. 1.) Without weighing the merits of the Individual Defendants' argument that Smith has not exhausted the administrative process as to the Individual Defendants, the Court finds that Smith has nevertheless failed to raise claims for which relief may be granted.

The Individual Defendants argue that Smith's Title VII and ADA claims necessarily fail because neither statutory scheme[5] imposes individual liability on employees or supervisors. (Doc. No. 10.) The Court concurs. In her opposition to Defendants' argument that they may not be held

---

[5]     Because Title VII and the ADA prohibit employer discrimination and do so by "essentially defin[ing] 'employer' in the same way[,]" *English v. Advance Auto Parts Store #3200,* Civil Action No. 3:20-cv-00959, 2021 WL 3438077, at *5 (M.D. Tenn. Apr. 5, 2021), *report and recommendation adopted by* 2021 WL 3088260 (M.D. Tenn. July 22, 2021), it is appropriate to analyze Smith's claims under these statutes at the same time.

16

liable    under    these    statutes,    Smith    asserts    the    following    relevant    information:

### I.    Introduction

Plaintiff Kendra Smith does not fail to state a claim on all four causes of action brought against defendants, which include but are not limited to 1. Termination in violation of Title VII of the Civil Rights Act of 1964 2. Discrimination and harassment in violation of Title VII 3. Retaliation in violation of Title VII and 4. Failure to accommodate in violation of the Americans with Disabilities Act. All claims are clearly stated.

In opposition of defense counsel's argument that the sixth circuit court settled that individual supervisors and managers who did not otherwise qualify as employers may not be held liable under Title VII or the ADA. Neither party is a supervisor or manager, and both parties are liable for their actions and plaintiff is entitled to relief from damages. As they acted in their official and individual capacity to violate the rights of Plaintiff Smith, harass, intimidate and committed illegal acts against Plaintiff Smith during her course of employment that entitle her to relief under the same complaint brought about against the employer as Plaintiff Smith has no personal relationship with either named defendant therefore further supporting Plaintiff Smith's claim for relief. Further, even if Title VII bars such actions Plaintiff Smith is entitled to relief under numerous federal, state and local laws and rules. Plaintiff avers she did exhaust her administrative remedies to bring Title VII and ADA claims against defendants and can show with proof of the acts committed against her, proof of the EEOC charge of discrimination, and proof of the defendants and their counsel not willing to mediate and/or settle, which all attempts were made numerous times since the dates acts occurred. Plaintiff states that there are no claims under T.C.A 39-17-308(2),

(Doc. No. 12 at 2.) Smith continues, asserting:

If this court decides that Individual claims are barred by Title VII relief this in no way bars other forms of relief to which Plaintiff is entitled by the actions of the defendants and damages are owed to the plaintiffs as stated in complaint. The misconduct, the harassment, bullying, coercion, intimidation, threats, instillation of fear, retaliation in addition to the hostile work environment created by them and other staff to which they colluded with. Further they directly and individually made decisions to ask Plaintiff Smith to break the law and work out of her scope of practice and denied accommodations when the activity for which some accommodations were needed was illegal. These two individuals are responsible under any and all federal and state laws this honorable court and the jury sees fit and applicable for the illegal and scandalous actions against the plaintiff including damages of lost wages. Plaintiff believes that Defense counsel does not understand EEOC, ADA or Title VII and defense further argues that no liability exists when clear liability exists as claims provide. These laws do not protect the defendants from any criminal or civil proceeding in any capacity and they are not entitled to any immunity. Further, Plaintiff

(*Id.* at 3.)

Despite Smith's contention otherwise, the Sixth Circuit has long held that individual employees and supervisors are plainly not subject to liability for discrimination under Title VII or the ADA. *See Stanley v. W. Mich. Univ.*, 105 F.4th 856, 864 (6th Cir. 2024) (first citing *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999), and then citing *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404–405 & n.6 (6th Cir. 1997)). Pointing to no competing authorities that suggest otherwise, Smith has failed to meet her burden of establishing that the Individual Defendants may be held liable for any alleged employment discrimination. The Court finds that Individual Defendants' motion may be resolved on this question alone and the Court sees no need to further analyze their exhaustion argument.

Smith's employment discrimination against to the Individual Defendants under claims pursuant to Title VII and the ADA should be dismissed.

## IV. Recommendation

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the motion to dismiss (Doc. No. 10) be **GRANTED**. Accordingly, the Magistrate Judge **RECOMMENDS** that:

- All of Smith's claims against Tasha Kennard and Courtney Sobieralski be **DISMISSED** and that the Clerk **ADMINISTRATIVELY TERMINATE** those two as defendants in this action;

- Smith's claims against Thistle Farms pursuant to Tenn. Code Ann. §§ 39-17-308 (harassment), 39-17-309 (intimidation of others from exercising civil rights), and 39-16-502 (false reporting) be **DISMISSED**; and

- Smith's claims against Thistle Farms brought under the Fourth, Fifth, Ninth, and Fourteenth Amendments be **DISMISSED**.

18

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 16th day of April, 2026.

LUKE A. EVANS
United States Magistrate Judge

19